Andrew G. Deiss (Utah Bar No. 7184)
John Robinson Jr. (Utah Bar No. 15247)
Brenda E. Weinberg (Utah Bar No. 16187)
DEISS LAW PC
10 West 100 South, Suite 425
Salt Lake City, Utah 84101
Tel: (801) 433-0226
adeiss@deisslaw.com
jrobinson@deisslaw.com
bweinberg@deisslaw.com
*Attorneys for the Plaintiffs*

## IN THE FOURTH DISTRICT COURT, PROVO DIVISION
## UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| IBC ADVANCED TECHNOLOGIES, INC., <br><br> *Plaintiff*, <br><br> vs. <br><br> **6th WAVE INNOVATIONS CORP,** a Utah corporation, and **MICHAEL L. SCHRIDER,** an individual, <br><br> *Defendants*. | MOTION FOR LIMITED EXPEDITED DISCOVERY <br><br> Case No. <br><br> Tier III |

Pursuant to Rules 26, 30, 33, and 34 of the Utah Rules of Civil Procedure, Plaintiff IBC Advanced Technologies, Inc. ("Plaintiff" or "IBC"), by and through counsel of record, hereby moves the Court for an order to preserve evidence and for limited expedited discovery in this action in connection with preliminary injunction proceedings. IBC has filed a motion for a

1

temporary restraining order to halt the use or dissemination of its misappropriated trade secrets and confidential information. The limited discovery sought here is directly relevant to the interim relief IBC seeks pending a disposition on the merits of this trade secret misappropriation dispute. It is designed to permit IBC and the Court to follow the trail of the misappropriated information. The grounds upon which the instant motion is based are set forth below.

## STATEMENT OF RELIEF SOUGHT AND GROUNDS THEREFORE

This case involves the theft of a company's closely-guarded and vitally important trade secrets and confidential information by former business associates Ucore Rare Metals Inc. ("Ucore") and its Chief Operating Officer, Defendant Michael L. Schrider ("Schrider")–to whom Plaintiff disclosed confidential information and trade secrets, and who, over the last few months, have been in the process of developing a product substantially similar to the proprietary tools and processes that IBC offers its customers and has solicited work from one of IBC's competitors, Defendant 6th Wave Innovations Corp

("6th Wave").

Defendant Schrider was sent by Ucore to Plaintiff's headquarters in American Fork, Utah to inspect the construction of a pilot-scale rare earth elements ("REE") separation plant ("Pilot Plant"). IBC discovered that inspection of the Pilot Plant was part of a fake "due diligence" process purportedly in connection with a contemplated joint venture with IBC. Schrider entered into a Nondisclosure Agreement ("NDA") in order to spuriously gain access to IBC's intellectual property, confidential information, and trade secrets. Schrider was sent to Utah frequently to monitor and assess IBC's technical work and gather economic and engineering data. After analysis and testing, IBC began engineering and constructing the Pilot Plant. As part of the anticipated joint venture, IBC also completed plans for an industrial-size platinum group metals ("PGM") plant, including business strategy and analysis, separation process, warehouse layout, process flow charts, material lists, instrumentation and equipment specifications, calculated proforma financials, contact lists, and strategic selection of a location to construct the plant are additional trade

secrets and confidential information in the hands of Schrider and Ucore. The relationship eventually soured, however, and the joint venture was never formed.

In the midst of turmoil over the joint venture, Ucore threatened IBC that Ucore could simply work with Defendant 6th Wave as an alternative to IBC. Ucore's CEO told IBC that 6th Wave "does exactly what IBC does."[1] 6th Wave describes itself as a nanotechnology company focused on extraction and detection of target substances at the molecular level, whose main laboratory is located in Salt Lake City, Utah. 6th Wave is a direct competitor of IBC. Since then, Atom Energy, Inc. has changed its name to Sixth Wave Innovations, Inc. in a reverse merger so that 6th Wave can list on the TSX.[2] Atom Energy is connected to a company that supplies solvent extraction technology, which competes with IBC. The closing of the merger occurred in the offices of Ucore's legal firm in Halifax, Nova Scotia. There is evidence that Schrider's

---

[1] [Izatt Dec., Ex. 2, ¶ 7.]

[2] [https://www.newsfilecorp.com/release/47228/Atom-Energy-Announces-Name-Change-to-Sixth-Wave-Innovations-Inc]

colleagues at Ucore now work for 6th Wave.[3] Byron Fillmore, who was the VP of Marketing for Ucore until he stepped down as part of a settlement agreement with the Canadian securities authorities, has procured a contest to design a new logo for both 6th Wave and Atom Energy.[4] Ucore even owns the domain name 6thwave.com.[5] Ucore is currently the lessor of the property in Vineyard, Utah in which the Pilot Plant is stored, and Schrider can grant 6th Wave access at any time to further misappropriate IBC's trade secrets and confidential information or attempt to reverse engineer the technology in the Pilot Plant. Further, an agent of Ucore has brazenly confirmed execution of the misappropriation by Schrider:

> **Ucore can engineer / design to a certain degree and not be starting from 'scratch', post-OTP [Option to Purchase] win. Just plug in the final data, formulas, flip the switch and watch her go…. We have the keys to the building, pay the rent and own the pilot-plant. Under the IBC Agreements, Ucore could share all SuperLig-1 with DPA [Defense Production Act] staff**.[6]

---

[3] [Discussion Boards, Ex. 3.]
[4] [https://nssc.novascotia.ca/enforcement-proceedings/fillmore-byron-millard]
[5] [6thwave.com WHOIS Information, Ex. 5.]
[6] [Discussion Boards, Ex. 3.]



### RE:RE:RE:RE:RE:An Overlooked Fact

We have the pilot plant reports also. Not results.....also reports that IBC was submitting on a monthly basis to Schrider for review. Ucore can engineer / design to a certian degree and not be starting from "scratch", post-OTP win. Just plug in the final data, formulas, flip the switch and watch her go --- Ucore hinted in December of filling any Izatt void. : )

> **We have the keys to the building, pay the rent and own the pilot-plant. Under the IBC Agreements, Ucore could share all SuperLig-1 with DPA staff…. you can reasonably think the CEQ's willing to go to bat for "Bokan permitting" an SX, is only because what the DOD / DPA decided on MRT.**[7]

### I look @ " hybrid SX " as DPA approving MRT



my69z (539) | September 20, 2019 10:14 pm

We have the keys to the building, pay the rent and own the pilot-plant. Under the IBC Agreements, Ucore could share all SuperLig-1 with DPA staff. Look at DPA website ----- it says they will also design your project, if needed. Now if you believe the CEQ ( federal permitting agency), DOD and their DPA department all talk to each other, then you can reasonably think the CEQ's willing to go to bat for "Bokan permitting" an SX, is only because what the DOD / DPA decided on MRT. An HPIP approval for Bokan, will say it all ------ the DOD doesn't "need" Ucore to be SX based. I also don't believe the DPA wants it either and this is all because of Izatt. But they all know he's going to lose MRT. So plenty of time to win and add-on MRT and again, if DOD / DPA also think that, then we'll see an HPIP approval. DPA is not, about economics ------ it even says that on their website.[8]

Just in the past few weeks, Schrider, via his company, Ucore, has announced plans to "expedite its anticipated ramp up" with its "largely 'off the

---

[7] [Id.]

[8] my69z is Christopher Campbell, who speaks regularly to Ucore executives and posts frequently in public forums about IBC and Ucore. It appears that Ucore drafts posts for him to publish. [Id.]

6

shelf' technology which can be deployed with little or no delay" in order to obtain United States federal and state funding. Ucore's purported "off the shelf" technology refers specifically to IBC's Confidential Information and trade secrets. All of this, Ucore urges, is "happening very quickly." In addition to Schrider's immediate plans to unlawfully disclose IBC's Confidential Information and trade secrets to third parties, Ucore just announced that it will be offering rights (the "Rights Offering") to holders of its common shares in Canada and the United States. Ucore is slated to realize gross proceeds of $28.41 million if it sells the shares available through the Rights Offering.

On September 12, 2019, IBC requested in writing that Schrider return IBC's Confidential Information.[9] On September 23, 2019, Schrider refused.[10] These documents and other Confidential Information in the hands of Schrider contain vital trade secrets that are at the core of IBC's business, including the identity of IBC's information for lab testing of the individual rare earth elements

---

[9] [Schrider Correspondence for Return of Confidential Information, Ex. 8.]
[10] [Id.]

as well as design, construction and operation of a pilot-scale rare earth elements ("REE") separation plant, an industrial-scale platinum group metals ("PGM") separation plant, and early design information for an industrial-scale REE separation plant. If these trade secrets and confidential information were to fall into the hands of a competitor–which, for the reasons explained in greater detail below, IBC suspects has happened already–the results for IBC would be catastrophic.

Without preliminary injunctive relief, Defendants' actions will cause IBC to suffer irreparable harm for which there is no adequate remedy at law. (*See InnoSys, Inc. v. Mercer*, 2015 UT 80, ¶ 34 ("A long-settled principle of trade secret law recognizes a presumption of harm upon proof of misappropriation. Over the years, courts have often ruled that a trade secret claimant is entitled to a rebuttable presumption of irreparable harm for the purposes of injunctive relief . . . .'")). Accordingly, IBC filed its motion for a temporary restraining order (with notice). IBC respectfully requests limited expedited discovery to ascertain the extent of Defendants' unlawful actions, and to quarantine IBC's proprietary

information so that it will not be used competitively against IBC before the Court is able to hear IBC's claims on the merits. The discovery will facilitate adequate preparation for an evidentiary hearing on IBC's motion for a temporary restraining order with notice.

Under Rules 30, 33 and 34 of the Utah Rules of Civil Procedure, this Court has inherent authority to control the disposition of matters on its docket with economy of time and effort for litigants, counsel, and the Court. *See W. Water, LLC v. Olds*, 2008 UT 18, ¶ 42 ("A district court has inherent power to make, modify, and enforce rules for the regulation of the business before it, to recall and control its process, and to direct and control its officers, including attorneys and such." (simplified)) Such relief is warranted here for several reasons. Based on the statements made by Ucore and its agents about imminently using IBC's technology, Ucore's prior threats to IBC about working with 6th Wave, Schrider's refusal to return IBC's Confidential Information, and Ucore's ownership of 6th Wave's domain name, Plaintiff has reasonable cause to believe that Defendants have misappropriated IBC's trade secrets in violation

of the Uniform Trade Secrets Act ("UTSA") and Schrider's NDA with IBC. Preliminary injunctive relief and expedited discovery therefore are critical to the protection of IBC's legitimate business interests. Absent expedited discovery, IBC faces prejudice in pursuing its application for injunctive relief, since it would not be able to identify what Defendants have taken, how Defendants have used what was taken, and precisely which actions may be necessary fully to enjoin the illegal conduct so as to preclude continued irreparable harm arising out of that conduct. In addition, limited expedited discovery will assist the Court in narrowing the issues and determining the facts in ruling on IBC's motion for a preliminary injunction.

To protect any claimed confidential information of Defendants, IBC proposes that the parties meet and confer to agree on appropriate search protocols designed to trace the path of the IBC information while safeguarding other information that is outside the scope of the dispute. Since IBC seeks only limited expedited discovery that would be within the expected scope of general discovery IBC would pursue on the merits of the dispute, any added burden on

Defendants from expediting the limited discovery will be minimal and will appropriately safeguard information that is not relevant to the dispute. The requested discovery is confined to a few, focused topics, concentrating on the trade secrets and confidential information that Defendants have misappropriated.

## **CONCLUSION**

THEREFORE, Plaintiff requests that the Court (1) issue an order requiring that Defendants maintain and preserve all records, documents and evidence, including electronic and social media evidence, relating to the claims made in the Complaint and relating to their assets and any financial transaction within the past ten years; and (2) grant Plaintiff leave to conduct expedited discovery related to the fraudulent scheme, disclosure of IBC's Confidential Information, and misappropriation of IBC's trade secrets by Defendants since 2015 through the following means:

1. Requests for production, interrogatories, and requests for admission to Defendants for the purposes of ascertaining the scope of the fraudulent scheme, disclosure of IBC's Confidential Information, and misappropriation of

IBC's trade secrets, with responses due within five (5) business days of the request.

2.      Depositions of Defendants and third parties, including any other individuals or entities that may have been involved in the fraud or to whom IBC's Confidential Information has been disclosed, with depositions to be held within ten business days of the issuance of the deposition notice or subpoena ad testificandum.

3.      Subpoenas duces tecum to third party entities with whom Defendants have partnered or engaged in business, financing, or activity that competes directly or indirectly with IBC in the Rare Metals Sector, Tailings Remediation Sector, and Catalytic Converter Recycling Sector, including, without limitation:

      a. ion-exchange technology,
      b. solvent extraction technology,
      c. solid phase extraction separation technology,
      d. molecularly imprinted polymers,
      e. engaging any competitor of IBC,
      f. separation and purification of materials pursuant to the rare metals sector,

   g. separation and purification of materials pursuant to the catalytic converter recycling sector, and

   h. separation and purification of materials pursuant to the tailings remediation sector.

4. Defendants should be required not to spoliate any potentially relevant documents or information.

Dated: October 18, 2019.

          Deiss Law PC

          s/ *Andrew G. Deiss*
          Andrew G. Deiss
          *Attorney for Plaintiffs*