IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IBC Advanced Technologies, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>6th Wave Innovations Corp. and<br>Michael L. Schrider,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND ORDER<br>DENYING PLAINTIFF'S MOTION<br>FOR A PRELIMINARY INJUNCTION**<br><br>Case No. 2:19-cv-00826<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

IBC Advanced Technologies, Inc., ("IBC") seeks a preliminary injunction against 6th Wave Innovations Corp. ("6th Wave") and Michael L. Schrider. IBC accuses 6th Wave and Mr. Schrider of actual or threatened misappropriation of IBC's trade secrets. IBC also claims that Mr. Schrider has retained as well as used and disclosed IBC's confidential information in breach of a nondisclosure agreement he signed with IBC. For the following reasons, the court denies IBC's motion for a preliminary injunction.

**I.**

This lawsuit is one of several arising out of a soured business relationship between IBC and Mr. Schrider's employer, Ucore Rare Metals Inc. ("Ucore"). IBC is a Utah-based, privately held corporation that "develops, manufactures, and sells . . . products and services specially designed to separate valuable molecules and elements from solutions." Dkt. No. 43 ("Am. Compl.") ¶ 1. Ucore is a Canadian company that was founded "as a junior mineral exploration company focused on identifying and developing mineral metal resources" and has "evolved to developing technology to separate rare earth elements [] from deposits on properties acquired by [it] and other sources." Dkt. No. 29-3 ("Manuel Aff.") ¶ 5. Ucore's head office is located in

Halifax, Nova Scotia. *Id.* ¶ 4. First formalizing their relationship in April 2014, IBC and Ucore sought to develop IBC's molecular-recognition technology ("MRT") for rare earth element separation in order to deploy this technology to exploit Ucore's mining rights at Bokan Mountain in Alaska. *See id.* ¶¶ 6–9, 21.

Mr. Schrider became involved with this project in late 2015 as an independent consultant for Ucore. *See* Dkt. No. 39-8 ("Schrider Decl.") ¶ 2. At this time, Mr. Schrider signed a nondisclosure agreement with IBC. *See* Dkt. No. 8-2 at 11; Dkt. No. 39 at 4. In February 2016, Mr. Schrider became the "Ucore Project Coordinator for the Pilot Plant that IBC was building for Ucore," and Jim McKenzie, the Chief Executive Officer of Ucore, asked "IBC to copy [Mr. Schrider] on matters related to the Pilot Plant." Schrider Decl. ¶ 3. Mr. Schrider was eventually hired by Ucore in August 2016, *see id.* ¶ 4, and is now its Chief Operating Officer, *see id.* ¶ 1. From December 2015 to September 2017, Mr. Schrider frequently traveled to IBC's headquarters to perform due diligence for Ucore relating to the Pilot Plant and to discuss Ucore and IBC's business relationship. *See* Dkt. No. 31-1 ("Izatt Decl.") ¶¶ 13–15.

When IBC filed its complaint in this case, 6th Wave became the newest party to the multiple outstanding lawsuits filed by or against IBC, Ucore, and their employees. "6th Wave is a nanotechnology company focused on extraction and detection of target substances at the molecular level" and "operates a laboratory in Salt Lake City, Utah." Dkt. No. 44-1 ("Gluckman Decl.") ¶¶ 10–11. In the past few years, 6th Wave has focused its efforts on gold extraction. *See id.* ¶¶ 17–18. It has recently, however, ventured into the extraction and purification of cannabinoids, which has led to a proposed merger between 6th Wave and Atom Energy, Inc. ("Atom"). *See id.* ¶¶ 19–21. "Atom has shared administrative resources with Ucore," and Atom's

management apparently "was introduced to [Ucore's Chief Executive Officer Jim] McKenzie and [Chief Financial Officer Peter] Manuel as promoters" in May 2017. *Id.* ¶¶ 33–34.

6th Wave's Chairman and Chief Executive Officer Jonathan Gluckman resides in Halifax, Nova Scotia. *See id.* ¶ 8. He and Mr. Schrider admit to having had one "substantive" conversation, which took place at a conference sometime during the first quarter of 2019. *Id.* ¶¶ 35–37; *see also* Schrider Decl. ¶ 7. The two claim to have discussed in very general terms the viability of MRT for rare earth element extraction. The two claim that Mr. Gluckman expressed doubts about the viability of this technology based on a previous, abandoned attempt by 6th Wave to develop MRT for lithium extraction, and that Mr. Schrider defended the viability of this technology. *See id.*; Gluckman Decl. ¶ 16, 37. In addition, "[t]o save expenses at the conference, Ucore and 6th Wave jointly rented a town house to stay in." Schrider Decl. ¶ 7.

Based on its interpretation of various public statements by Ucore, its understanding of 6th Wave's relationship with Atom and Atom's relationship with Ucore, its learning that Ucore owns the domain name "6thwave.com," and its discovery of a ZoomInfo profile for Peter Manuel stating that he works for 6th Wave, IBC filed this lawsuit in Utah state court on October 18, 2019. *See* Dkt. No. 8-2 at 3–8, 13, 39–56. IBC asserted three causes of action against both 6th Wave and Mr. Schrider for trade secrets misappropriation, unjust enrichment, and conspiracy, and three causes of action against Mr. Schrider alone for common law fraud, negligent misrepresentation, and breach of contract. *See* Dkt. No. 8-1 at 28–40. Along with its complaint, IBC filed a motion for a temporary restraining order and preliminary injunction against 6th Wave and Mr. Schrider. *See* Dkt. No. 12 at 1–2. That same day, the Utah court issued an ex parte TRO, enjoining 6th Wave and Mr. Schrider from misappropriating IBC's trade secrets and confidential information and ordering Mr. Schrider to return all IBC trade secrets and confidential

information pursuant to a nondisclosure agreement he had signed with IBC. *See id.* at 2. The case was removed to this court on October 28, 2019. *See* Dkt. No. 2.

On October 31, 2019, this court held a hearing to discuss the TRO and preliminary scheduling matters. *See* Dkt. No. 24. By oral order, this court held that the ex parte TRO issued by the Utah state court had expired by its own terms, denying IBC's request to extend the TRO and denying as moot Mr. Schrider's request to dissolve the TRO. *See id.* In addition, this court issued an expedited briefing schedule for IBC's motion for a preliminary injunction, *see* Dkt. No. 23, and held a preliminary injunction hearing on December 16, 2019, *see* Dkt. No. 85. Prior to the hearing, IBC filed an amended complaint, reducing its claims to just two: (1) a claim against both 6th Wave and Mr. Schrider for trade secret misappropriation and (2) a claim against Mr. Schrider for breach of contract. *See* Am. Compl. at 19–23. At the preliminary injunction hearing, this court granted 6th Wave's motion to dismiss the one remaining claim against it and indicated that this court would deny, by subsequent written order, IBC's motion for a preliminary injunction. *See* Dkt. No. 85.

## II.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A party may be granted a preliminary injunction only when . . . 'the right to relief [is] clear and unequivocal.'" *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (citation omitted). To obtain a preliminary injunction, a party "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "'[C]ourts have consistently noted that because a showing of probable irreparable harm is the

single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements' will be considered." *Malamed*, 874 F.3d at 1141 (citation omitted). Such a showing is "not an easy burden to fulfill." *Id.* (citation and internal quotation marks omitted).

IBC maintains that Mr. Schrider and 6th Wave have misappropriated or are threatening to misappropriate IBC's trade secrets in violation of Utah's Uniform Trade Secrets Act ("UTSA"), Utah Code § 13-24-1 *et seq*. To establish a prima facie case of misappropriation under this statute, a party must establish "two essential elements: the existence of a protectable 'trade secret' of a plaintiff and demonstration of 'misappropriation' by a defendant." *InnoSys, Inc. v. Mercer*, 364 P.3d 1013, 1018 (Utah 2015). Misappropriation includes "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret of another without express or implied consent" by a person meeting certain specified requirements. *Id.* at § 13-24-2(2). Misappropriation can be inferred from circumstantial evidence. *See USA Power, LLC v. PacifiCorp*, 235 P.3d 749, 761 (Utah 2010). In addition, IBC maintains that Mr. Schrider has retained as well as disclosed and used IBC's confidential information in violation of his nondisclosure agreement with IBC.

### III.

The court finds that IBC has failed to establish irreparable injury. Specifically, the court finds that IBC has failed to establish that 6th Wave and Mr. Schrider have used or disclosed, are using or disclosing, or are threatening to use or disclose IBC's trade secrets and confidential information. Instead, the evidence presented so far establishes at most that Ucore has made statements reflecting optimism that it will prevail in litigation currently pending in Canada,

which would enable Ucore to acquire IBC pursuant to one of their agreements; that Ucore and 6th Wave might be developing a business relationship; and that Ucore is considering using Solvent Extraction ("SX") technology in the short term—instead of IBC's MRT technology—to move forward on the Bokan mining project. IBC has accordingly failed to show any injury—let alone irreparable injury—from the use or disclosure of its trade secrets or confidential information. The court further finds that IBC has failed to show that any injury it has suffered from Mr. Schrider's mere possession of the information at issue here is irreparable. Because IBC has failed to establish irreparable injury, its motion for a preliminary injunction must be denied.

Based on a careful review, the court finds that far from establishing that Ucore has used, is using, or is threatening to use IBC's trade secrets or confidential information, the various public statements by Ucore cannot be fairly read even to suggest that it has any intent to use IBC's MRT absent a victory in the Canadian litigation. For example, Ucore's September 4, 2019, press release notes the "intermediate impasse with IBC" and the resulting "likelihood that MRT will not be available for the near term engineering advancement of the Alaska SMC." Dkt. No. 8-8 at 18. The press release continues by stating that "Ucore has since been encouraged to deliver an SX-based proposal for early stage development, commencing immediately, without the involvement of IBC." *Id.* At the hearing, IBC's President and CEO Steven R. Izatt admitted that SX technology is widely available from companies other than IBC. Hearing at 20:20–22:45, 39:00–41:05; *see also* Hearing Ex. 201 ¶ 25; Hearing Ex. 202 ¶¶ 53, 59; Hearing Ex. 203 ¶ 8. Indeed, it is the court's understanding that IBC has not developed and does not market SX technology. *See id.* Ucore's various public statements, including this press release, show only that Ucore is optimistic that it will prevail in the Canadian litigation—which, as noted, would allow Ucore to acquire IBC—that pending that anticipated victory, Ucore intends to develop the

Bokan mine with this "SX-based proposal," and that Ucore is planning to supplement this SX-based proposal with IBC's MRT *after* its anticipated victory in the Canadian lawsuit. As the September 4 press release further notes, "MRT, once *legally* liberated for use in [rare earth elements] applications, holds substantial promise as a *complementary* separation stage . . . ." Dkt. No. 8-8 at 18 (emphasis added).

The court likewise finds that the evidence offered by IBC regarding the supposed business relationship between 6th Wave and Ucore (or at least some of Ucore's employees) does not plausibly suggest—let alone establish—that Ucore or its employees have transferred or are threatening to transfer IBC's trade secrets or confidential information to 6th Wave. It is true that Mr. Schrider and Mr. Gluckman met at a conference and had one brief discussion in which they stated opposite views regarding the general viability of MRT for rare earth element extraction. And it is also true that 6th Wave and Ucore shared a town house for a conference in January 2019, that Atom has shared administrative functions with Ucore, and that 6th Wave's Chief Executive Officer resides in the same city where Ucore—and Atom—are located. But these facts fall far short of establishing that Ucore or Mr. Schrider has disclosed IBC's trade secrets or confidential information to 6th Wave. There is no evidence, for instance, that 6th Wave has any interest in rare-earth extraction (whether based on MRT or SX technology), that 6th Wave has changed its operations in any way that would suggest the incorporation of IBC's trade secrets or technology, or even that Mr. Schrider has been in contact with 6th Wave since the 2019 conference.

In short, the scant evidence IBC has presented cannot support even a plausible inference that 6th Wave or Mr. Schrider has wrongfully used or disclosed, is wrongfully using or disclosing, or is threatening to use or disclose IBC's trade secrets and confidential information—

and it certainly falls far short of satisfying the difficult burden of demonstrating irreparable injury as a result of such wrongful use or disclosure.

IBC also contends that that Mr. Schrider has wrongfully retained confidential information, including trade secrets, that he received from IBC. Mr. Schrider disputes that he is required to return the information in question. The court need not parse the various contracts at issue in this case to determine who is correct, however. For regardless of whether IBC is entitled to the return of the disputed information, IBC has not established that any injury that it has or will suffer as a result of Ucore or Mr. Schrider's mere possession of this information is irreparable.

To be sure, IBC argues that it "will be irreparably harmed by the loss of bargained-for leverage if Schrider is not enjoined" from violating the NDA agreement. Dkt. No. 26 at 3. IBC points to paragraph 10 of the NDA, which provides that "disclosure or use by [Mr. Schrider] of the Confidential Information of [IBC] could cause irreparable harm and significant injury that may be difficult to ascertain." Dkt. No. 21 ¶ 10. The same paragraph further provides that IBC "shall have the right to seek an immediate injunction enjoining any breach or threatened breach of" the NDA. *Id.*

These contractual provisions establish neither irreparable injury nor IBC's right to injunctive relief. As an initial matter, it is not clear that parties can contract around the requirement that a preliminary injunction may issue only upon proof of irreparable injury. And cases such as *DTC Energy Grp. Inc. v. Hirschfeld*, 912 F.3d 1263 (10th Cir. 2018), and *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256 (10th Cir. 2004), suggest that they may not. In all events, paragraph 10 states only that *disclosure* or *use* of IBC's confidential information *could* cause irreparable harm. But as discussed above, IBC has not

shown that Mr. Schrider has disclosed or used IBC's confidential information. Nor does this provision state that irreparable harm necessarily will result from such disclosure or use, but only that it could. And although paragraph 10 states that IBC may *seek* injunctive relief, it does not follow that it is excused from demonstrating the legal prerequisites for such relief, including irreparable injury.

IBC also invokes Utah's presumption that the misappropriation of trade secrets will result in irreparable injury. *See* Dkt. No. 26 at 2–3. Citing *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136 (10th Cir. 2017), Defendants argue that the Tenth Circuit has rejected such a presumption. The court need not determine whether Defendants are correct. Nor need it determine whether such a presumption is a procedural matter governed by federal law or a substantive matter governed by state law. *See, e.g., Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). For even if a presumption of irreparable injury is potentially available in federal court, the Utah Supreme Court has made clear that this presumption would arise only "upon proof of misappropriation." *InnoSys, Inc.*, 364 P.3d at 1020–21 & n.13. As discussed above, Utah law defines misappropriation as either "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "*disclosure* or *use* of a trade secret of another without express or implied consent" by a person who used improper means to acquire the trade secret or who possesses the *mens rea* specified in the statute. Utah Code Ann. § 13-24-2. Here there is no allegation that Mr. Schrider or Ucore acquired IBC's trade secrets through improper means—to the contrary, the alleged secrets were intentionally provided by IBC pursuant to the parties' contractual relationship. And, as discussed above, IBC has failed to establish any past, current, or threatened unauthorized use or disclosure of its trade secrets.

IBC has accordingly failed to establish irreparable injury, and its motion for a preliminary injunction therefore fails. *See Malamed*, 874 F.3d at 1141 (citation omitted).

*     *     *

For the foregoing reasons, the court **DENIES** IBC's motion for a preliminary injunction.

**IT IS SO ORDERED.**

DATED this 30th day of January, 2020.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge